The People of the State of New York, Respondent, *v.* William W. Formosa, Appellant.

A foreign corporation seeking to do business in this state must obey its laws and conform to its public policy.

The legislature may, as to them and as to domestic corporations, specify how and on what terms they may do business, and may enact laws regulating their conduct and that of their agents, and enforce obedience to those laws by such penalties, forfeiture and punishments as it may within constitutional limits prescribe.

Accordingly *held*, that the provisions of the act of 1889 (Chap. 282, Laws of 1889), in relation to life insurance companies doing business in this state, which forbids them or their agents from paying or allowing any rebates of premium as inducement to any person to insure, and declaring any person violating the prohibition guilty of a misdemeanor, was

constitutional; and that the fact that a person indicted and found guilty of a violation of the act was acting in the transaction as agent of a foreign corporation, did not affect his liability.

An indictment under the act alleged that defendant was acting in the transaction as agent of a corporation organized under the laws of the state of Vermont. It appeared that the company was doing business in this state and that defendant represented it as a Vermont corporation. *Held,* that in the absence of any objection, the evidence was sufficient to justify a finding that the company was a corporation authorized to do business in this state.

The indictment charged the offense to have been committed on October 26, 1890; the proof showed it was committed about a year before that date. It did not appear by the record that this variance was in any way called to the attention of the court on trial and there was no exception presenting the point. *Held,* that it was not available here; as, if the objection had been made on the trial the court could have allowed an amendment of the indictment. (Code Crim. Pro. § 293.)

Reported below, 61 Hun, 272.

(Argued March 4, 1892; decided March 15, 1892.)

APPEAL from judgment of the General Term of the Supreme Court in the fifth judicial department, entered upon an order made October 23, 1891, which affirmed a judgment entered upon a verdict convicting the defendant of the crime of unlawfully paying and allowing a rebate of premium upon a life insurance policy in violation of the act of 1889 (Chap. 282, Laws of 1889).

The facts, so far as material, are stated in the opinion.

*W. Henry Davis* for appellant. The judgment should be reversed because there is no evidence that the National Life Insurance Company of Montpelier, Vermont, is a corporation as charged in the indictment. (*King* v. *Potnell,* 2 East, 1059; *Chadwick's Case,* 2 Park. Cr. Rep. 163; *Commonwealth* v. *Atwood,* 11 Mass. 11; *U. S.* v. *Howard,* 3 Sumn. 12; *State* v. *Porter,* 3 Day, 283; 1 Swan, 262; *State* v. *Copp,* 15 N. H. 212; *State* v. *Shoemaker,* 7 Mo. 177; *Morrison* v. *State,* 24 Miss. 36; *Cohen* v. *People,* 5 Park. Cr. Rep. 337.) The law under which defendant was convicted is unconstitutional. (*In re Jacobs,* 98 N. Y. 98, 108; *People* v. *Gillson,* 109 id. 389;

*McCraken* v. *Heyward*, 2 How. 612; *J. W. & W. R. Co.* v. *Jacksonville*, 67 Ill. 37; *Coe* v. *Shultz*, 47 Barb. 69; *Quintini* v. *City of Mississippi*, 1 South. Rep. 625; *Town of Lake View* v. *R. H. Co.*, 70 Ill. 191; *Slaughter House Cases*, 16 Wall. 39, 87, 88, 97, 105, 111, 116, 119, 122; *Thorp* v. *R. R. Co.*, 27 Vt. 140; Cooley on Const. Lim. [5th ed.] 446; *Lowry* v. *Rainwater*, 70 Mo. 152; *Peck* v. *Anderson*, 57 Cal. 251; *Stuart* v. *Palmer*, 74 N. Y. 183, 190; *Calder* v. *Bull*, 3 Dall. 386; *In re Ryers*, 72 N. Y. 1; *Weismer* v. *Vil. of Douglas*, 69 id. 91; *People* v. *E. T. Co.*, 96 id. 387; *Rockwell* v. *Nearing*, 35 id. 302; *In re Townsend*, 39 id. 171; *In re Cem. Assn.*, 66 id. 569; *In re Eureka Co.*, 96 id. 42; *People* v. *Marx*, 99 id. 377; Penal Code, § 335; *Bertholf* v. *O'Reilly*, 74 id. 515; *Wynehamer* v. *People*, 13 id. 378; *Corfield* v. *Coryell*, 4 Wash. [C. C.] 380; Potter's Dwarris on Stat. 458; *Austin* v. *Murray*, 16 Pick. 121, 126; *Watertown* v. *Mays*, 109 Mass. 315, 319; *In re Chesebrough*, 78 N. Y. 232; *Bartmeyer* v. *Iowa*, 18 Wall. 129; 1 Black. Comm. 139; *Pumpelly* v. *G. B. Co.*, 13 Wall. 171; *Liquor Cases*, 25 Kan. 765; *Boyd* v. *U. S.*, 116 U. S. 635; *Barbier* v. *Connolly*, 113 id. 31; *Yick Wo* v. *Hopkins*, 118 id. 356; Const. art. 1, § 1; 1 Smith's Wealth of Nations, chap. 10, part 2; 2 Kent's Comm. 1; *L. S., etc., Association* v. *C. C., etc., Co.*, 1 Abb. [N. S.] 398; 16 Wall. 106; *Mayor, etc.,* v. *Thorne*, 7 Paige, 263; 111 U. S. 746, 751, 760; Const. U. S. art. 1, § 10.)

*George A. Benton* for respondent. The demurrer interposed to the indictment was properly overruled. The offense is statutory and an indictment which covers the offense as the statute defines it is sufficient. (*People* v. *Kelly*, 3 N. Y. Crim. Rep. 272; *People* v. *Phelps*, 72 N. Y. 334; *Pickett* v. *People*, 8 Hun, 83; *People* v. *West*, 106 N. Y. 293, 295; *People* v. *Willett*, 102 id. 251, 253; *People* v. *Dimick*, 107 id. 13, 29; *Ladano* v. *State*, 25 Ala. 64; *State* v. *Shenton*, 22 Minn. 311; *People* v. *Dunn*, 53 Hun, 381, 384; *People* v. *Burns*, 25 N. Y. S. R. 97; Code Crim. Pro. §§ 275, 285.) The point that the incorporation of the company was not proved is unten-

able. (*People* v. *Guidici*, 100 N. Y. 503; *People* v. *Thompson*, 41 id. 1; *People* v. *Casey*, 72 id. 393, 399; *Conner* v. *People*, 50 id. 240; *Brotherton* v. *People*, 75 id. 159.) Secondary evidence not objected to is competent proof. (*People* v. *Guidici*, 100 N. Y. 503, 508.) The act in question was passed, like the Interstate Commerce Act, to prevent unjust discrimination, and all acts of this nature where they affect a large public interest and are general and uniform, come within the police power of the state and are constitutional and valid. (*People* v. *Budd*, 117 N. Y. 1; *People ex rel.* v. *Durston*, 119 id. 569; *People ex rel.* v. *Ferry*, 108 id. 1; *Patterson* v. *Kentucky*, 97 U. S. 501; *Marmet* v. *State*, 45 Ohio St. 63; *People ex rel.* v. *Squire*, 107 N. Y. 593; *Hackett* v. *State*, 105 Md. 250; *Moses* v. *State*, 65 Miss. 66.)

EARL, Ch. J. In 1889, the defendant was the agent at Rochester of the National Life Insurance Company, of Montpelier, Vermont, a corporation organized under the laws of that state and doing business in this state. He was indicted, tried and convicted under the act, chapter 282 of the Laws of 1889, for paying and allowing to one Graves, as an inducement to him to insure his life in that company for $3,000, a rebate of fifteen per cent on the first year's premium. The defendant assails the judgment of conviction upon various grounds.

He was indicted on the 30th day of October, 1890, and the indictment alleges the commission of the offense on the 26th day of October, 1890. The proof showed the commission of the offense to have been about one year earlier, and his counsel now claims that there was a fatal variance between the time alleged in the indictment and that shown by the proof. It does not appear by the record that this variance was in any way called to the attention of the court upon the trial, and the record contains no exception presenting the point for our consideration. If objection on this ground had been made at the trial, the court could have allowed an amendment of the indictment under section 293 of the Code of Criminal Pro-

cedure. (*People* v. *Johnson*, 104 N. Y. 213; *People* v. *Jackson*, 111 id. 362.)

The indictment alleges that the Vermont company was a corporation organized under the laws of that state, and it is claimed that no proof was given upon the trial showing its corporate existence. No such objection was made at the trial, and there is no exception presenting that point for our consideration. If objection had been made, the district attorney might have furnished the technical proof required to establish the incorporation of the company. But we agree with the court below that there was sufficient evidence that the Vermont insurance company was a corporation authorized to carry on the business of insurance. If it was not, it could not, under the laws of this state, have transacted business here. It appeared in the evidence that it was transacting business here; that the defendant represented it and held it out as a corporation. It was spoken of by the witnesses as such, and the policy which was issued to Graves was indorsed by the defendant as " General Agent of the National Life Insurance Company of Vermont." In the absence of objection, such evidence was sufficient; and so we think the objection was not well taken.

The main point, however, upon which the learned counsel for the defendant relies here is, that the act making it a criminal offense for him to pay a rebate to induce any person to effect insurance in the company, was unconstitutional on the ground that it arbitrarily and unjustly abridged his natural rights and personal liberty in the conduct of his business. He claims that the act has no relation to the public safety or welfare, and hence that it could not be enacted under the police power which the state, through its legislature, can exercise. Life insurance companies perform very important functions in modern society. They operate in all parts of the state, and a very large number of people are interested in them. They are resorted to for the purpose of making provisions for families and dependents after the death of the insured, and for that purpose many persons invest in them the accumulations of their labor and their thrift. The nature of

insurance contracts is such that each person effecting insurance cannot thoroughly protect himself.   He is not competent to investigate the condition and solvency of the company in which he insures, and his contracts may run through many years and mature only, as a rule, at his death.   Under such circumstances, it is competent for the legislature, in the inter-est of the people and to promote the general welfare, to regu-late insurance companies and the management of their affairs, and to provide by law for that protection to policy holders which they could not secure for themselves.   Under such con-ditions there should be a wide range of legislative power to promote the public welfare in the exercise of the police power, and the true boundaries of that power it would be difficult in such a case to prescribe.   We have no occasion now to specify to what extent it might reach, or in any way to place upon it its proper limitations, because, in order to justify the act in question, it is not necessary to resort to that power.

The business of life insurance in this state is mainly carried on by insurance companies authorized by law, and minute pro-visions are made regulating their incorporation and their busi-ness; and a department of the state government has been constituted to supervise them.   The corporations organized under the laws of this state for life insurance are absolutely under the direction and control of the legislature.   It may specify how and on what terms they may do business and enact laws regulating their conduct and the conduct of their agents for their protection and the protection of their policy holders, and enforce obedience to such laws by such penalties, for-feitures and punishments as it may, within constitutional limits, prescribe.   As all these corporations must act through agents, it has the same power and authority to regulate the conduct of their agents as it has to regulate the corporations themselves. It would be quite preposterous to say that the legislature could, in the exercise of its legitimate authority, regulate these corporations and prescribe the terms under which they may exist and do business, and yet could not by similar laws regu-late and control the conduct of their agents.   When these

corporations seek the benefits and privileges of the laws creating and authorizing them, they must conform to the laws enacted for their conduct, and if they are unwilling to do so, they must go out of existence. So, too, all persons who seek to act as agents of such corporations must conform to the laws regulating the business of such corporations or cease to act for them.

We have not here the question as to what a private individual may do in the conduct of his private business, but the question here is as to the power of the legislature over corporations and their agents. The power exercised over these insurance companies and their agents is similar to that exercised by the legislature over banks and railway corporations; and it has never been doubted that such power exists, and the legislative power to regulate them and their agents in the minutest particular in the interest of the public, has never been questioned.

The fact that this company was a foreign corporation can make no difference. When it comes into this state by comity to do its business here through its agents, it must obey our laws and conform to our public policy, and if they are unwilling to do so, they must keep out of the state.

We may not be able to perceive the purpose or the wisdom of this act. It is sufficient that we perceive the legislative will in the act, and we need not speculate as to the policy which prompted it.

So we think there is no doubt the act is constitutional, and the judgment should be affirmed.

All concur.

Judgment affirmed.