WILLIAM BOSWELL, Appellant, *v.* SECURITY MUTUAL LIFE INSURANCE COMPANY, Respondent.

1. STATUTE CANNOT INTERFERE WITH OBLIGATIONS OF CONTRACTS. Any law which enlarges, abridges or in any manner changes the intention of the parties resulting from the stipulations in their contract, necessarily impairs its obligation; and while it is difficult to place precise limits upon legislative power over corporations created by or under its authority, it cannot deprive the corporation of its property, or interfere with or annul its contracts with third persons.

2. POLICE POWER CANNOT BE INVOKED TO REDUCE COMPENSATION. While the police power of the State is not limited by a hard and fast defi-

nition, it cannot justify the reduction, by law, of the compensation which an insurance company has agreed to pay its agent.

3. Section 97, Insurance Law, Construed. Section 97 of the Insurance Law (L. 1906, ch. 326), limiting the amount of compensation to be paid by life insurance companies for new business, does not apply to contracts entered into before its passage and should not be construed as retroactive  An insurance company entered into a contract with an agent by which he was to procure insurance and was to be paid in part by commissions on future premiums, at a rate larger than that permitted by the statute.  Plaintiff entered on the performance of the contract and continued to fulfil the stipulations on his part, spent much time and incurred much expense in obtaining business.  The contract provided that it should run for the term of twenty years.  *Held,* that the contract of the agent with the company, which had been in existence for nearly five years and still had about fourteen years to run at the time of the enactment of section 97, is not affected by that legislation so as to change its provisions as to the amount of commissions.  The contract is not abrogated or modified by the act of the legislature.

4. Specific Provision of Contract Construed.  The contract between the agent and insurance company contained a clause providing that "changes in premium rates or classes in present form of policies shall not be construed as a new form of policy."  The court considered the special form of policies in the case as submitted for adjudication, and held they were not new either in form or plan.

*Boswell* v. *Security Mut. Life Ins. Co.,* 119 App. Div. 723, modified.

(Argued October 14, 1908;  decided December 8, 1908.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the third judicial department, rendered July 31, 1907, in favor of plaintiff, upon the submission of a controversy under the provisions of section 1279 of the Code of Civil Procedure.

The nature of the controversy and the facts, so far as material, are stated in the opinion.

*George M. Baker* and *Morgan J. O'Brien* for appellant. Section 97 of the Insurance Law does not, and was not intended to, affect the contract of October 30, 1901. (*Mottley* v. *L. & N. R. R. Co.,* 150 Fed. Rep. 406.)  Section 97 of the Insurance Law should not be so construed as to give it retroactive operation, unless by its express terms or clear implication such a construction is unavoidable.  If such a

construction would cause interference with vested rights then it should not be given. (*Metcalf* v. *U. T. Co.*, 181 N. Y. 39; *People* v. *O'Brien*, 111 N. Y. 1.) To give to section 97 of the Insurance Law the construction asked for by the defendant would be to make the statute obnoxious to the Constitution of the United States and the state of New York, and hence render it unconstitutional. In the absence of words in the statute making such construction imperative, the courts will adopt such other construction as will preserve the constitutionality of the act and at the same time render it operative. (*People* v. *Otis*, 90 N. Y. 48; *People* v. *O'Brien*, 111 N. Y. 1; *Mayor, etc.,* v. *T. T. S. Ry. Co.*, 113 N. Y. 311; *Lord* v. *E. Ins. Co.*, 109 App. Div. 252; *People* v. *Nat. Trust Co.*, 82 N. Y. 283; *City of Buffalo* v. *Chadeayne*, 134 N. Y. 163.) The law of 1906, as interpreted, construed and applied by the court below, is not within the scope of the " police power." (*People* v. *Hawkins*, 157 N. Y. 1; *Lochner* v. *State*, 198 U. S. 45; *Schnaier* v. *N. H., etc., Co.*, 182 N. Y. 83; *Matter of Sugden* v. *Partridge*, 174 N. Y. 87; *People* v. *Wells*, 181 N. Y. 252.) There is nothing in the contract which indicates that the parties thereto contemplated that the legislature of the state of New York might pass an act impairing the obligation of the contract. (*People* v. *Nat. Trust Co.*, 82 N. Y. 283; *Prewitt* v. *S. M. L. Ins. Co.*, 119 Ky. 321.) The plaintiff's contract existed when this law was passed, and was valid when made. Therefore, the application of this new law to the plaintiff's contract violates the clause of the Constitution which prohibits a state from passing a law which impairs the obligations of contracts. (*Sturgis* v. *Crowninshield*, 4 Wheat. 122; *McCracken* v. *Hayward*, 2 How. [U. S.] 608; *Louisiana* v. *New Orleans*, 102 U. S. 203; *Bryan* v. *Virginia*, 135 U. S. 685; *Vicksburg* v. *Water Works*, 202 U. S. 453; *L. S. & M. S. R. Co.* v. *Smith*, 173 U. S. 684; *Pearsall* v. *G. N. Ry. Co.*, 161 U. S. 646; *Sinking Fund Cases*, 99 U. S. 700; *Fletcher* v. *Peck*, 6 Cranch, 87, 135; *Mumma* v. *Potomac Co.*, 8 Pet. 281; *Tomlinson* v. *Jesup*, 15 Wall. 454.) The reserved power to repeal the charter of

a corporation does not help the defendant if the charter is not repealed. Nor does this power imply authority to reduce by law the compensation which the corporation by a valid contract which it had power to make agreed to pay an employee. (*Mumma* v. *Potomac Co.*, 8 Pet. 281; *People* v. *O'Brien*, 111 N. Y. 1; *People* v. *G. M. L. Ins. Co.*, 91 N. Y. 174; *People* v. *Formosa*, 131 N. Y. 482; *S. M. Ins. Co.* v. *Prewitt*, 200 U. S. 446; 202 U. S. 246; *Paul* v. *Virginia*, 8 Wall. 168; *C. Mfg. Co.* v. *Ferguson*, 113 U. S. 727; *Hooper* v. *California*, 155 U. S. 648; *W.-P. Oil Co.* v. *Texas*, 177 U. S. 28; *Crane* v. *Bennet*, 177 N. Y. 112.) The state could not, as an exercise of the police power, reduce the compensation the defendant agreed by a valid contract to pay the plaintiff, because such a law cannot be sustained as an exercise of the police power of the state. (*Manigault* v. *Springs*, 199 U. S. 473; *Wright* v. *Hart*, 182 N. Y. 330; *Health Dept.* v. *Rector, etc.*, 145 N. Y. 32; *Lawton* v. *Steele*, 152 U. S. 133; *Colon* v. *Lisk*, 153 N. Y. 187; *Jacobson* v. *Massachusetts*, 197 U. S. 17; *Railroad Co.* v. *Husen*, 95 U. S. 465; *Matter of Viemeister*, 179 N. Y. 235; *People* v. *Havnor*, 149 N. Y. 195; *People ex rel. Nechamcus* v. *Warden*, 144 N. Y. 529; *People* v. *Gillson*, 109 N. Y. 389.)

*Harvey D. Hinman* and *Frederic William Jenkins* for respondent. Section 97 of the Insurance Law applies and was intended to apply to past as well as future commission contracts. (26 Am. & Eng. Ency. of Law [2d ed.], 598.) The contract itself shows that the parties contemplated a possible annulment or modification of the agreement by statute. (*People ex rel.* v. *Dayton*, 55 N. Y. 374; *B. E. S. R. R. Co.* v. *B. S. R. R. Co.*, 111 N. Y. 132; *People* v. *Formosa*, 131 N. Y. 478; *Stewart* v. *Stone*, 127 N. Y. 500.) Even if it could be held that paragraph "first" of the contract was not an express recognition by the parties of the possibility of such legislation and a specific agreement to be bound thereby, yet under the facts and the law the possibility of such legislation was within the contemplation of the parties. (2 Pars, on

1908.]    Boswell v. Security Mut. Life Ins. Co.    469

N. Y. Rep.]    Opinion of the Court, per Edward T. Bartlett, J.

Cont. [9th ed.] 728; *Hicks* v. *B. A. Assur. Co.*, 162 N. Y. 284; *David* v. *Sup. Lodge*, 165 N. Y. 159; *Spaulding* v. *Rosa*, 71 N. Y. 40.; *People* v. *Tubbs*, 37 N. Y. 586; *Lorillard* v. *Clyde*, 142 N. Y. 456; *Jones* v. *Judd*, 4 N. Y. 412; *Niblo* v. *Binsse*, 1 Keyes, 476; *People* v. *Bartlett*, 3 Hill, 570; *People* v. *Manning*, 8 Cow. 297; *Kingsley* v. *City of Brooklyn*, 78 N. Y. 200; *Shellington* v. *Howland*, 53 N. Y. 371; *Heine* v. *Meyer*, 61 N. Y. 171.) Section 97 of the Insurance Law, applying as it does to plaintiff's contract, is constitutional and valid. (*People* v. *Formosa*, 131 N. Y. 483; *C. L. Ins. Co.* v. *Needles*, 113 U. S. 574; *E. Ins. Co.* v. *State*, 153 U. S. 446; *Bertholf* v. *O'Reilly*, 74 N. Y. 509.) The policies now issued by defendant in conformity with the Laws of 1906 are different both in form and substance from the policies issued prior to January 1, 1907, and are new forms within the meaning of the contract. For this reason the plaintiff cannot recover and the judgment must be affirmed. (L. 1906, ch. 326, §§ 83, 97, 101.)

Edward T. Bartlett, J.    One of the questions submitted was decided below in favor of the defendant; the Appellate Division awarded the plaintiff judgment for $132.06, it being conceded that amount was due him. The plaintiff insists this award of judgment was insufficient in amount, for reasons hereinafter stated. It was stipulated that if both the questions submitted were decided in favor of the plaintiff he should have judgment for $191.54.

The case presented involves the construction of section 97 of the Insurance Law (Laws of 1906, chapter 326), the material portions of which are as follows: " Section 97.    Limitation of expenses.— No domestic life insurance corporation shall in any calendar year after the year nineteen hundred and six expend or become liable for or permit any person, firm or corporation to expend on its behalf or under any agreement with it (1) for commissions on first year's premiums, (2) for compensation, not paid by commission, for services in obtaining new insurance exclusive of salaries paid in good faith for

agency supervision either at the home office or at branch offices, (3) for medical examinations and inspections of proposed risks, and (4) for advances to agents, an amount exceeding in the aggregate the total loadings upon the premiums for the first year of insurance received in said calendar year (calculated on the basis of the American experience table of mortality with interest at the rate of three and one-half per centum per annum) and the present values of the assumed mortality gains for the first five years of insurance on the policies on which the first premium, or instalment thereof, has been received during said calendar year, as ascertained by the select and ultimate method of valuation as provided in section 84 of this chapter.   \*   \*   \*   No such corporation, nor any person, firm or corporation on its behalf or under any agreement with it shall pay or allow to any agent, broker or other person, firm or corporation for procuring an application for life insurance, for collecting any premium thereon or for any other service performed in connection therewith any compensation other than that which has been determined in advance.   \*   \*   \*   No such corporation, nor any person, firm or corporation on its behalf or under any agreement with it, shall make any loan or advance to any person, firm or corporation soliciting or undertaking to solicit applications for insurance without adequate collateral security, nor shall any such loan or advance be made upon the security of renewal commissions, or of other compensation earned or to be earned by the borrower except advances against compensation for the first year of insurance."

The statement of facts contains, in part, the following : The plaintiff was at the time of making the contract and ever since has been a citizen of the state of Ohio.   The defendant is a domestic life insurance company with its principal place of business in the city of Binghamton, New York.   The defendant is a mutual company on what is known as the "old line" basis.   In the written agreement between the parties, entered into on the 30th day of October, 1901, the defendant is party of the first part, and the plaintiff party of the second part.   The defendant appointed the plaintiff its general agent

in the states of Ohio, West Virginia, Tennessee and Kentucky, for the purpose of procuring applications for insurance on the lives of individuals satisfactory to the defendant. It is provided that the contract is subject to the condition that the company continues to be legally authorized to carry on business in the territory named, and if its authority is terminated in any section thereof the contract is to be null and void so far as new business in such section is concerned. The plaintiff is obligated to devote his entire time and best energies to the service of the company; to have the exclusive right to appoint agents within said district, for whose fidelity and honesty he is to be responsible to the company. In consideration of the performance of this contract by the plaintiff the company is to pay a brokerage commission on the cash premiums as collected for the first year, as follows: On certain participating policies from seventy per cent to twenty per cent; on other non-participating policies from sixty per cent to thirty per cent; there are also provisions for overwriting brokerage and other commissions and various regulations unnecessary to state in detail. The plaintiff is to give a bond with sureties for the faithful performance of the contract; also is to pay all the expenses of building up and conducting the business, subject to minor exceptions not now important.

The contract further provides as follows: " During the continuance of this contract, said party of the second part shall not act as agent or broker for any other life insurance company or agent, except to place business which this company may have declined.   *   *   *   This contract is for the term of twenty years from its date subject to its terms and conditions."

It also appears in the statement of facts that, at the time the contract was entered into, the defendant had comparatively little business in force in the four states mentioned; that upon the execution of the contract the plaintiff entered upon the performance thereof and continues up to the present time; that he established agencies and rented offices for the conduct of defendant's business in numerous cities and towns in said territory, paying the resident agents

and office rents; he employed superintendents and instructors, paying their salaries and traveling expenses; that he advertised, at his own expense, the business of the defendant in various newspapers in the states named; in brief, it appears that the plaintiff has performed the contract on his part, and, as a result of his efforts and the expenditure of his money, he has built up for the defendant business aggregating about five millions of dollars, now in force in said states.

There are two questions presented for our determination. The first is, whether the plaintiff's contract with the defendant as to the rate of commissions, which had been in existence for nearly five years, and having about fourteen years to run, at the time section 97 of the Insurance Law was enacted, in 1906, is affected by said legislation to the extent of changing its provisions as to the amount of plaintiff's commissions and materially reducing them.

It is important to keep in mind the precise relations of the parties. The defendant company, at the time the contract was executed, October 30th, 1901, had comparatively little business in force in the states of Ohio, West Virginia, Tennessee and Kentucky. The plaintiff, who was a resident of the city of Cincinnati, Ohio, covenanted to devote his entire time and energies to building up a business for the defendant in the states named during the twenty years the contract was to run. He received no salary; he paid substantially the expense of the undertaking, and it is obvious that the long term of the contract was due to the fact that its initial years would be unproductive to a great extent; that the building up of a paying business was a work of time, hard labor and large expenditure. It appears that after the lapse of some five years the plaintiff had secured the defendant business aggregating about five million of dollars now in force in the states mentioned. The remaining fourteen years or more of the contract term evidently covered the period when plaintiff might well expect the reward for past labor and expenditure. The plaintiff and defendant at the outset had agreed upon the commissions to be allowed the former, which were, by

legal construction, to be paid during the life of the contract, unless modified by the parties, or interrupted as to its future performance by the decease or incapacity of the plaintiff, or the corporate death of the defendant.

We thus have a contract in full force and effect, satisfactory to the parties, and the sole question presented on this branch of the case is whether that has been abrogated or modified by the subsequent act of the legislature of the state of New York. We are of opinion that section 97 of the Insurance Law should not be construed as retroactive, and, therefore, it does not apply to the contract before us. If construed otherwise it would contravene the provision of the Federal Constitution that no state shall pass any law impairing the obligation of contracts. (Art. 1, sec. 10.) The contract provides for an ordinary business arrangement between a citizen of Ohio and a private corporation of this state; it does not offend against public policy and cannot be interfered with by the general or reserve powers of the legislature, or the exercise of the police power. At this late day it is unnecessary to quote largely from the authorities bearing upon the question when the obligation of a contract is impaired. In *Sturges* v. *Crowninshield* (4 Wheat. 122, 197) Chief Justice Marshall said: " In discussing the question whether a state is prohibited from passing such a law as this, our first inquiry is into the meaning of words in common use. What is the obligation of a contract? and what will impair it? It would seem difficult to substitute words which are more intelligible, or less liable to misconstruction, than those which are to be explained. A contract is an agreement in which a party undertakes to do or not to do a particular thing. The law binds him to perform his undertaking, and this is, of course, the obligation of his contract. * * * Any law which releases a part of this obligation must, in the literal sense of the rule, impair it."

Applying this language to the contract before us we have precisely the situation pointed out by the learned chief justice in his illustration of what constitutes the impairment

of the obligation of a contract. In the present case definite compensation of the plaintiff by way of commissions was fixed by the contract for twenty years, subject to minor exceptions.

In 2 Story on the Constitution (Sec. 1385) the learned author lays down the rule as follows: " It is perfectly clear, that any law which enlarges, abridges or in any manner changes the intention of the parties, resulting from the stipulations in the contract, necessarily impairs it." (See, also, *People ex rel. Manh. Sav. Instn.* v. *Otis*, 90 N. Y. 48; *Ogden* v. *Saunders*, 12 Wheat. 256.)

In *Mayor, etc., of N. Y.* v. *Twenty-third Street Railway Co.* (113 N. Y. 311) Earl, J. (p. 317), states: " It is difficult to put precise limits upon the power of the legislature thus reserved over corporations created by it or under its authority. Under its reserved power it cannot deprive a corporation of its property, or interfere with, or annul its contracts with third persons." *People* v. *O'Brien* (111 N. Y. 1) deals with the legal situation presented when the Broadway Railway Company suffered legal death. It was held that its mortgages and valid contracts survived its dissolution. (See, also, *People* v. *National Trust Co.*, 82 N. Y. 283.) In the case before us the corporation has not suffered legal death, but is a going company clothed with all its charter rights.

The question is thus presented whether the obligation of the contract of the plaintiff with the defendant company can be impaired by the act of the legislature of the state of New York long after the contract went into effect. The counsel seeking to sustain this legislation cites two cases, viz.: *People* v. *Globe Mutual Life Insurance Co.* (91 N. Y. 174) and *People* v. *Formosa* (131 N. Y. 478). The case of the *Globe Mutual Life Insurance Co.* held that where a life insurance company had entered into a contract with its general agent for his services for a specified term and, before any breach of the contract on its part, it was deprived of corporate life and its assets turned over to a receiver, the agent had no valid claim upon the fund in the receiver's hands for damages for an

alleged breach of the contract because of the discontinuance of his employment. The case of *People* v. *Formosa* (*supra*) held that a foreign corporation seeking to do business in this state must obey its laws and conform to its public policy. And it was accordingly held that the provision of law in relation to life insurance companies doing business in this state which forbids them or their agents from paying or allowing any rebates of premiums as an inducement to any person to insure, and declaring any person violating the prohibition guilty of a misdemeanor, was constitutional; and the fact that a person indicted and found guilty of a violation of the act was acting in the transaction as an agent of a foreign corporation did not affect his liability.

Obviously these cases, having in mind what was actually decided therein, have no bearing on the question before us. The Appellate Division in discussing when the obligation of the contract is impaired, states: " The rule doubtless is as contended by plaintiff that the legislature under this reserved power granted to it by the Constitution cannot interfere with or annul a contract between a corporation and other parties." This concession is in accordance with the unbroken current of authority, either in the case of a contract terminated by the legal death of a corporation, where the agent may resort to the receiver for the collection of any amount due him at that time; or the case of an agent of a going corporation, where contract obligations for his benefit cannot be impaired by subsequent legislation. The ground upon which the court below rested its decision is best stated in its own language, as follows: " Now, the plaintiff, when he became the general agent of the defendant under his contract, became vitally and essentially connected with its ' domestic affairs.' He became an important part of its mechanism. The machinery of life insurance has largely been conducted through the instrumentality of agents. Such corporations have, through their agents, promulgated, performed and perpetuated their policies, plans and purposes, and through them the wrongs and abuses, if any, of life insurance have sometimes been inflicted on a confiding

public. When plaintiff made his contract he knew that he was to become an essential factor in the domestic affairs and internal organism of the defendant, and that such domestic affairs and internal organism were under the reserve power of the Constitution of this state, subject to legislative change. He became identified with the operation, development and business life of the defendant and one of the organs of its corporate existence." The learned court then cites *People* v. *Globe Mutual Life Insurance Co.* and *People* v. *Formosa* (*supra*). Referring to the *Formosa* case the court said: " What was said in the above case is doubly emphasized when we recall that the act of 1906 was enacted in response to an aroused and urgent public sentiment as the result of grave evils and abuses disclosed by the processes of a legislative investigation. And when it is also recalled that among such abuses were the methods employed by certain agents, the claim of plaintiff that his contract was not within the purview of the statute would seem to be completely refuted."

We are unable to concur in this reasoning of the court below. The plaintiff in executing his contract with the defendant became its general agent in the foreign territory named, subject to the provisions thereof, nothing more or less, and no inference is to be drawn that he became a factor in the domestic affairs, mechanism, internal organism or policy of the defendant. The opinion of the court below then continues: " Were there otherwise any doubt that the legislation in question was within the contemplation of the parties to the contract, such doubt would be dissipated by reference to the following provision in such contract: ' This contract is made subject to the condition that the said company is and shall continue to be legally authorized to transact business in said district. Should authority to transact business in any section thereof be at any time terminated, this contract shall become null and void so far as new business in such section is concerned.' True, this provision in terms only relates to a total cessation of business. But the parties clearly had in mind the possibility that the legislature of this state might interdict

the defendant from all business within the states comprising the plaintiff's territory. They were also bound to know, what no one disputes, that said legislature might put the corporation to death. Knowing all this, it was a psychological impossibility for the parties not to include within their mental grasp the idea that the corporation might be limited or restricted in its operation in such a way as to affect the plaintiff's contract."

The court below, in quoting from the contract, as above, is in error as to its terms only relating to a total cessation of business. The quotation is very clear when the other provisions of the contract are recalled. The defendant was entering upon an agreement with the plaintiff in regard to territory covering the four states named, and the first provision was that the contract was subject to the condition that the defendant should continue to be legally authorized to transact business in the district covered by these states; and furthermore, it was provided that should authority to transact business in any section thereof, that is, in any of the territory embraced by the four states, the contract should become null and void so far as new business in such section is concerned.

We cannot concur with the reasoning that this very proper provision in the contract relating to the four states named leads to the inference that the parties clearly had in mind the possibility that the legislature of the state of New York might interdict the defendant from all business within the states comprising the plaintiff's territory. It is doubtless true that the defendant, as a domestic corporation of this state was bound to know the law, that if it violated the statutes of this state to such an extent as to merit corporate death, the legislature had full power and authority to inflict upon it that penalty. The result of such legislative action would terminate all contracts of agency which were, of course, dependent upon the continued life of both parties.

We agree with the contention of plaintiff's counsel that the police power of the state cannot justify the reduction by law of the compensation which the defendant agreed in its con-

tract with the plaintiff to pay him. We see nothing in the provisions of the contract, or in the surrounding circumstances of this case, that disclose a situation which warrants an appeal to the police power. While it has been frequently said that the police power cannot be defined, and it is not desirable to have it limited by a hard and fast definition, yet all the cases hold that it must be invoked in order to protect the lives, health, morals, comfort and general welfare of the public. There is nothing in the facts of this case that bring it within any of the accepted definitions of the police power.

Referring to the nature of this power, Judge Peckham, in *Health Department of N. Y.* v. *Rector, etc.* (145 N. Y. 32) said (p. 39): "It has frequently been said that it is difficult to give any exact definition which shall properly limit and describe such power. It must be exercised subject to the provisions of both the Federal and State Constitutions, and the law passed in the exercise of such power must tend in a degree that is perceptible and clear towards the preservation of the lives, the health, the morals or the welfare of the community, as those words have been used and construed in many cases heretofore decided."

This general subject was considered in *Lawton* v. *Steele* (152 U. S. 133). At page 137 the court said : "The legislature may not, in the guise of protecting the public interests, arbitrarily interfere with private business or impose unusual or unnecessary restrictions upon lawful occupations. In other words, its determination as to what is a proper exercise of its police power is not final and conclusive, but is subject to the supervision of the courts." (See, also, *Wright* v. *Hart*, 182 N. Y. 330, 333.)

The court below at the close of its opinion states that "Having reached the conclusion that the statute limits the amount which the defendant may lawfully pay the plaintiff, it is unnecessary to consider the further question raised by defendant as to the difference in the forms of policies."

We will now consider the second question, as to whether new forms of policies have been adopted upon which plaintiff

is to recover changed commissions under the contract, subdivision "Sixteenth," which reads as follows: "The commissions hereinbefore specified shall not apply to any new forms of policies hereafter adopted by the said party of the first part, but shall apply only to the policies now in use by said company, but changes in premium rates, or clauses in present forms of policies shall not be construed as a new form of policy. It, however, is understood and agreed that the said second party shall be allowed and paid on any such new policies as large a brokerage and renewal commission as is paid to or allowed any other manager or agent of the company."

The discussion of this question in the briefs and arguments of counsel has taken a wide range and considered many propositions that are irrelevant, in view of the fact that in deciding the first question we have reached the conclusion that section 97 of the Insurance Law (Laws of 1906, chap. 326) does not apply to the contract between the plaintiff and defendant, as it is not retroactive. The sixteenth paragraph of the contract, already quoted, provides in part that " The commissions hereinbefore specified shall not apply to any new forms of policies hereafter adopted by the said party of the first part (the defendant), but shall apply only to the policies now in use by said company, but changes in premium rates, or clauses in present forms of policies shall not be construed as a new form of policy."

In subdivision fifth of the statement of facts it is agreed that "The words 'form of policy,' as used in the contract, have, prior to January 1st, 1907, been interpreted by the parties as equivalent to 'plan of policy;' the Whole Life being considered as one 'form' or 'plan,' the Limited Payment as another 'form' or 'plan,' the Endowment as another 'form' or 'plan,' etc." It is agreed that the policies on which the plaintiff seeks to recover his commissions (subdivision ninth in the statement of facts) are Exhibits " M " and " N," being the New York Standard Life Insurance Policies. It is also agreed in said subdivision that since January 1st, 1907, the plaintiff has, from time to time, procured applications in his

said territory for insurance which have been approved by the defendant company, and on which participating policies have been issued by the defendant, and for which the defendant has been paid in cash the first year's premiums thereon. It is further agreed that Exhibit " N " is the Twenty Year Endowment; Exhibit " M " embraces two " forms " or " plans " of policy, viz., Twenty Payment Life and Ten Payment Life.

The defendant asks the court to hold that the foregoing policies are all new forms of policies under the contract and, as such, are subject only to commissions as therein provided. Referring to the statement of facts, subdivision ninth, it is agreed that since January 1st, 1907, the defendant has received on policies procured by plaintiff in cash the first year's premiums on Twenty Year Endowment policies, Exhibit " N ; " Twenty Payment Life policies, Exhibit " M," and Ten Payment Life policies, Exhibit " M." It appears these " forms " or " plans " of policies were not new. The Twenty Year Endowment policy issued after January 1st, 1907, is within the meaning of the contract the same " form " or " plan " as the Twenty Year Endowment policy issued prior to January 1st, 1907. The same is true of the Twenty Payment Life and the Ten Payment Life. In other words, changes in premium rates or clauses in present forms of policies are not to be construed as a new form. The various names applied to policies indicate the " form " or " plan " under which they are to be operated. We have in the statement of facts two illustrations of the rule above stated.

It is agreed that some years after the making of the contract and prior to January 1st, 1907, the defendant issued a " new form of policy " called a " Coupon Bond," which both parties agreed was a new form within the meaning of the plaintiff's contract, and the defendant fixed the commissions thereon accordingly. It is also agreed that since January 1st, 1907, the defendant has adopted for use outside of the state of New York a new form of policy known as the " Five Year Convertible Term."

We have, therefore, reached the conclusion that the policies involved in this submitted case are not new in "form" or "plan" as contended by the defendant. It follows that under the stipulation of the parties the plaintiff is entitled to judgment for $191.54, without costs.

The judgment of the Appellate Division should be modified by providing that the plaintiff should have final judgment for $191.54, without costs.

CULLEN, Ch. J., GRAY, HAIGHT, WERNER, WILLARD BARTLETT and HISCOCK, JJ., concur.

Judgment accordingly.