IDA VICTOR, Respondent, v WILLIAM TURNER, Defendant, and NEW YORK PROPERTY INSURANCE UNDERWRITING ASSOCIATION et al., Appellants.

Second Department, December 23, 1985

**APPEARANCES OF COUNSEL**

*Gwertzman, Pfeffer, Toker & Lefkowitz (Roger Bruce Feinman* and *Morton Greenwald* of counsel), for appellants.

*Sachs & Spector, P. C. (Joseph J. Pasch* of counsel), for respondent.

## OPINION OF THE COURT

Gibbons, J.

In this action to recover under a fire insurance policy, the question on appeal is whether, in the absence of nonrenewal, a notice of cancellation for nonpayment of premium is required to terminate coverage for the renewal term of a policy protected by Insurance Law § 167-a (now § 3425). We conclude that such notice is required, and therefore affirm.

There are no factual issues on appeal, for the parties, in lieu of trial, submitted the matter to the trial court on the following agreed statement of facts.

Appellants issued a fire insurance policy to plaintiff, Ida Victor, which provided for total coverage of $25,000. The policy term was for one year from December 30, 1977 to December 30, 1978. Prior to the policy expiration, a notice of renewal and premium bill was received by the plaintiff for a renewal policy term of one year. The renewal premium was never paid by the plaintiff; a notice of cancellation was never sent by the appellants. A fire destroyed plaintiff's premises on September 4, 1979.[1]

The trial court awarded judgment to plaintiff, notwithstanding her failure to pay the renewal premium. Construing Insurance Law § 167-a, that court held that issuance of the renewal premium bill caused the policy to be renewed. Thereafter, a cancellation notice pursuant to Insurance Law § 168 (5) (now § 3404 [e]) was required to terminate coverage. Accordingly, in the absence of such notice of termination, coverage continued to be effective during the renewal term (including the date of the fire).

On appeal, appellants contend that payment of the renewal premium was a condition necessary to keep plaintiff's policy in force, and that having defaulted in the performance of that condition, her policy simply expired by its terms. Furthermore, there was no contractual or statutory obligation upon appellants to provide plaintiff with notice of the policy's expiration and the concomitant termination of coverage. Ap-

---

1. It was further stipulated that if there was to be any recovery or award for the damages sustained, it would not exceed the sum of $20,000, including interest, costs and disbursements.

pellants further characterize the notice of renewal and premium bill as a mere offer to renew for which there was neither acceptance nor performance by plaintiff. We reject these contentions.

In reaching our decision, we do not consider the provisions of Insurance Law § 168, for the issue may be resolved solely on the language of section 167-a governing renewal and cancellation of certain "covered"[2] insurance policies, the legislative history concerning its adoption, and the public policy reflected therein and in decisional law construing the section.

Before addressing the specific subdivisions of Insurance Law § 167-a which govern the instant dispute, we examine the legislative history and public policy which engendered the adoption of its "guaranteed" and "automatic" renewal provisions (see, State of New York Insurance Department memorandum, 1974 NY Legis Ann, at 219; Corsa & Son v Harnett, 92 Misc 2d 569, 571; Country-Wide Ins. Co. v Harnett, 426 F Supp 1030, 1035, affd 431 US 934). Section 167-a was adopted in 1974 (L 1974, ch 1072, § 2). With respect to automobile and other "personal lines" insurance policies (those which cover personal noncommercial loss, e.g., homeowners and fire), coverage could not be nonrenewed or canceled during what was defined as a "[r]equired policy period" of three years, except upon enumerated conditions (see, Insurance Law § 167-a [1] [a], [c]; [3], [5]).

Prior to the 1974 enactment creating Insurance Law § 167-a, the statutory requirements for nonrenewal of fire insurance policies differed from those for nonrenewal of automobile insurance policies. The distinction was based on perceived differences in the public policies involved. Since there was a greater likelihood that an innocent third party could be adversely affected by a lack of automobile insurance coverage than by an absence of fire insurance, the State had a greater interest in keeping automobile policies in effect absent some overt and deliberate act on the part of the insurer (see, Matter of State Farm Mut. Auto. Ins. Co. v Matthews, 74 AD2d 875). The 1974 amendment was designed to make the rules governing the cancellation and renewal provisions of automobile

---

2. Appellants concede on appeal that the fire insurance contract at issue is a "covered" policy within the meaning of Insurance Law § 167-a (1) (a) (i) (see, Sanders v Chautauqua County Patrons' Fire Relief Assn., 67 AD2d 1091).

insurance and other personal line policies "more uniform" *(see,* preamble to L 1974, ch 1072). As a result, the same provision covered renewal of both fire and automobile insurance, evidencing an intention on the part of the Legislature to subject fire insurance renewals to the same standards which were applicable to automobile insurance. In a legislative memorandum supporting the bill, the State of New York Insurance Department (hereinafter the Department) stated:

"The purpose of the bill is to simplify and strengthen the protections against cancellations and nonrenewals and placements of coverages which are now set forth in Sections 116-1, 167-a and 167-b of the Insurance Law by repealing those sections and renacting *[sic]* a revised Section 167-a, which combines and strengthens the provisions contained in the sections repealed and makes uniform the differing rules which now apply to automobile and other kinds of insurance * * *

"The new Section 167-a would provide that most insurance policies governing automobiles and personal risks must be renewed for a three year period starting with the issuance of the policy * * * after the effective date of the bill. After a policy had been in effect sixty days, cancellation would be permitted only for the limited reasons set out in the bill (Section 167-a (3)). Individual coverages afforded under a policy could be cancelled or reduced only for the same specified reasons. Section 167-a (4) of the bill would continue the current requirement that notices of non-renewal be mailed to insureds between 45 and 60 days prior to the anniversary date of the policy.

"Subdivision 5 of the new Section 167-a amends current guaranteed renewability provisions to provide a three year period of guaranteed renewability which is the same for all lines of insurance, during which the insurer may non-renew a policy only for the same reasons for which it might have cancelled the policy" (1974 NY Legis Ann, at 219-220).

The Department characterized as "irrelevant" the differences in coverage between automobile and other personal lines insurance contained in the replaced sections of the Insurance Law (1974 NY Legis Ann, at 220). According to the Department, Insurance Law § 167-a would provide "guaranteed continuity of coverage" for consumers, a service otherwise readily available to commercial insureds, who are in a position to bargain for such coverage. The approach taken, the Department stated, was to require renewal during a three-year

period[3] in all circumstances, and then to specify particular reasons for which cancellation would be permitted, the most obvious being nonpayment of premiums (1974 NY Legis Ann, at 221). The statutory language governing nonrenewal and cancellation of automobile and other personal lines insurance was identical (Insurance Law § 167-a [1] [c]; [2], [3], [4] [a]; [5] [e]). However, the grounds for cancellation or nonrenewal understandably differed as certain grounds for cancellation of automobile coverage would simply not apply to other personal lines coverage (e.g., suspension of a driver's license, Insurance Law § 167-a [3] [a] [ii]).

The 1974 enactment of Insurance Law § 167-a obviously reflects the broad proposition that insurance industry transactions with consumers are not governed by ordinary contract law. "The business of insurance is one which affects the public interest. Today, as never before, consumers are placing considerable stress upon the protection afforded by insurance. As a result the insurance industry is subjected to minute and specific statutes and regulations. The Legislature specifies how and on what terms the companies and their agents may do business" *(Corsa & Son v Harnett,* 92 Misc 2d 569, 571-572, *supra; People v Formosa,* 131 NY 478, 483). Indeed, commenting on the public policy determination evident in the legislative enactment of Insurance Law § 167-a, we have previously stated: "Public policy * * * requires that the burden of terminating coverage be placed affirmatively on the insurer, rather than on the insured. An insurance company has superior record-keeping ability, as well as a tangible financial interest in obtaining renewals. Common experience indicates that insured persons do not ordinarily keep careful track as to the expiration dates of their insurance policies * * * Consistent with the enunciated public policy, as set forth in the statute,

---

3. With regard to automobile policies, the mandatory three-year renewal period was intended to ensure continuance of an orderly market during the early years of no fault, the fear being that vast numbers of insureds would be dumped from the voluntary market. *(See, Country-Wide Ins. Co. v Harnett,* 426 F Supp 1030, 1035.) In the first quarter of 1976, there was a 35% increase in applications to the assigned risk program in the face of the required three-year continuation of older business. Finding that rate adjustments for 1975 underwriting losses would be altered by the expiration of the original three-year mandatory renewals, the required renewal period was extended for an additional year (1976 NY Legis Ann, at 291; L 1976, ch 348, § 3). This was only the first of such extensions *(see,* L 1977, ch 214, § 2; L 1978, ch 429, § 1). The current required policy period for automobile insurance is one year; it remains three years for personal lines insurance *(see,* Insurance Law § 3425 [a] [6], [7]).

mere silence on the part of the insurance carrier cannot operate to terminate its liabilities to the insured" *(Zeman v Zack Agency,* 75 AD2d 261, 265-266).

In light of the foregoing, it is unlikely that the Legislature, while prescribing guaranteed continuity of coverage through mandatory renewals, and permitting cancellation only upon exclusive and enumerated grounds, would, at the same time, permit insurers to avoid the strictures of section 167-a by the simple expedient of billing a renewal premium and thereafter permitting coverage to terminate without a notice of cancellation or grace period. A close examination of the statutory language reveals that no such loophole exists.

The relevant subdivisions of section 167-a prohibit nonrenewal during the three-year "required policy period", except upon grounds for which the policy could have been canceled (Insurance Law § 167-a [1] [c]; [5]).

Cancellation is permitted only upon specified grounds once "a covered policy has been in effect for 60 days, or upon the effective date if the policy is a renewal" (Insurance Law § 167-a [3]). "Nonpayment of premium" is a ground for cancellation, and, therefore, also a ground for nonrenewal (Insurance Law § 167-a [3] [a] [i]; [b] [i]; [5]). If a ground for nonrenewal exists during the required policy period, the insurer must notify the insured of its intent not to renew well in advance of the end of the policy period. The notice provision states: "(4) (a) Unless the insurer, at least forty-five, but not more than sixty days in advance of the end of the policy period, mails or delivers to the named insured, at the address shown in the policy, a written notice of its intention not to renew a covered policy, or to condition its renewal upon change of limits or elimination of any coverages, *the named insured shall be entitled to renew the policy upon timely payment of the premium billed to the insured for the renewal.* The specific reason or reasons for nonrenewal or conditioned renewal shall be stated in, or shall accompany the notice required by this subdivision. This subdivision shall not apply when the named insured, an agent or broker authorized by the named insured, or an insurer of the named insured, has mailed or delivered written notice to the insurer that the policy has been replaced or is no longer desired" (Insurance Law § 167-a [4] [a]; emphasis supplied).

In the case at bar, there is no issue regarding notice of nonrenewal, as there was no allegation of notice, nor of grounds permitting nonrenewal within the policy period. Ac-

cordingly, plaintiff was "entitled *to renew* the policy upon *timely payment* of the premium billed" (Insurance Law § 167-a [4] [a]; emphasis supplied; hereinafter referred to as the quoted phrase). It is undoubtedly correct that the plain language of the quoted phrase appears to condition renewal upon payment, i.e., that renewal coverage does not take effect absent payment. However, an examination of the definitions contained in Insurance Law § 167-a indicates otherwise.

In our endeavor to ascertain the meaning of the quoted phrase, we recognize that the Legislature may, in enacting a statute, define the terms used therein *(see,* McKinney's Cons Laws of NY, Book 1, Statutes § 75 [b]). Furthermore, the courts have a duty to recognize definitions thus established *(People ex rel. Champlin v Gray,* 185 NY 196, 200). In this connection, reference may be had to section 167-a (1) which defines the term "to renew", as well as "timely" payment and "nonpayment of premium". "To renew" or "renewal" is defined as "the issuance and delivery by an insurer, at the end of the policy period, of a policy superseding a policy previously issued and delivered by the same insurer, or the issuance and delivery of a certificate or notice extending the term of a policy beyond its policy period or term" (Insurance Law § 167-a [1] [b]). This language clearly contemplates a renewal (i.e., superseding) policy which is in effect upon issuance and delivery at the "end of the policy period". Furthermore, the named insured is entitled to this "renewal" upon "timely payment of the premium billed" (Insurance Law § 167-a [4] [a]). The meaning of "timely payment" is critical, and the definition of "nonpayment of premium", a ground for cancellation and nonrenewal, indicates that the outside date for timely payment is determined by the date on which the insurer mails a notice of cancellation. "Nonpayment of premium" is defined as "the failure of the named insured to discharge any obligation in connection with the payment of premiums * * * Payment * * * shall be timely if made within fifteen days after the mailing to the insured of a notice of cancellation for nonpayment of premium" (Insurance Law § 167-a [1] [d]).

Once the definitions are substituted in the quoted phrase, it states that the insured shall be entitled to the issuance and delivery of a superseding policy at the end of the policy period upon payment during the 15-day grace period after a notice of cancellation for nonpayment of the billed premium is mailed. In this light, the quoted phrase indicates a legislative purpose to guarantee continuity of coverage for a grace period follow-

ing the end of the preceding policy period, as well as notice if coverage is to be terminated. Such purpose is not accomplished by requiring the insurer merely to bill a renewal premium. This construction is also in harmony with section 167-a (3), which permits a notice of cancellation on the effective date of a renewal policy for nonpayment of premium.

Further support for this construction is found in the fact that the quoted phrase represents a change in language from its predecessor, former section 167-b (4), which read, "the named insured shall be entitled to renew the policy upon payment of the premium due on the effective date of the renewal" (L 1969, ch 189, § 2). Under statutory rules of construction, the Legislature, "in enacting an amendment of a statute * * * changing the language, is deemed to have intended to materially change the law" (McKinney's Cons Law of NY, Book 1, Statutes § 193 [a]). Construing the replacement language to require payment of the billed premium on or before the effective date of renewal "would leave the law exactly where it stood before the amendment was adopted" *(Lamport v Smedley,* 213 NY 82, 85-86), for, as we have previously declared, the pertinent legislative intent of Insurance Law § 167-b was to "put the onus on the insured to make payment 'on the effective date of the renewal' " *(Zeman v Zack Agency,* 75 AD2d 261, 265, *supra).* Given the change in language, we must seek the new legislative purpose and construe the law so that it may be effectuated *(James v Patten,* 6 NY 9, 12). When considered against the background of public policy and legislative history, outlined earlier, and the legislatively supplied definitions, we must conclude that the procedure envisioned by the Legislature was to permit the insurer to mail a notice of cancellation on "the effective date if the policy is a renewal" for "nonpayment of premium" if the named insured has not paid the billed premium for the superseding policy, with that cancellation becoming effective after the expiration of the 15-day grace period (Insurance Law § 167-a [1] [b], [d]; [3], [4] [a]).

We find that the principal weakness in the appellants' argument is that their interpretation of section 167-a does not advance the public policy underlying that provision, which as we have noted earlier, was to require "that the burden of terminating coverage be placed affirmatively on the insurer, rather than on the insured" *(Zeman v Zack Agency,* 75 AD2d 261, 265-266, *supra).* The general rule involving cancellation is that notice provisions and statutes must be literally complied

with and any ambiguities in language are construed against the insurer *(see, Government Employees Ins. Co. v Mizell,* 36 AD2d 452, 453-454; *Fifty States Mgt. Corp. v Public Serv. Mut. Ins. Co.,* 67 Misc 2d 778, 782). The requirement of a notice of cancellation is for the benefit of the insured *(see, Allstate Ins. Co. v Republic Ins. Co.,* 78 Misc 2d 668, 670), and a notice of cancellation is not valid unless it is clear, unconditional and unequivocal *(see, Silberzweig v New York Prop. Ins. Underwriting Assn.,* 59 AD2d 737). Since this complex statute does not contain an explicit provision concerning the situation where there is neither notice of nonrenewal nor payment of premiums *(see, Zeman v Zack Agency,* 75 AD2d 261, 265, *supra),* holding that the policy expired without the superseding policy taking effect in the present case would result in an interpretation of an ambiguous statute in favor of the insurer, contrary to the general rule stated above. Allowing an insurer to terminate its obligations by sending a bill rather than a notice of cancellation is contrary to the spirit of the public policy favoring the guaranteed continuity of coverage embodied in mandatory renewals.

Under the construction offered by the appellants, an insurer who is mandated to renew during the required policy period and who, therefore, could not nonrenew except upon enumerated "cancellation" grounds, could, nevertheless, fulfill its mandated obligation by billing the insured for a renewal term without concomitantly issuing and delivering an effective renewal policy. To noncommercial insurance consumers who "do not ordinarily keep careful track as to the expiration dates of their insurance policies" *(Zeman v Zack Agency,* 75 AD2d 261, 266, *supra),* and who are also accustomed to cancellation notices and grace periods prior to termination of coverages, such construction engenders an inadvertent trap under a statute which was intended to protect, and provides a loophole to insurers to eliminate risks where they would otherwise be unable to do so.

We note that our decision is not inconsistent with *Zeman v Zack Agency (supra).* There we held that "in the absence of an explicit notice of nonrenewal in conformity with the statute, and in the absence of a bill for a renewal premium due upon the expiration date of the policy, an insurance policy remains in effect, and is deemed renewed beyond its expiration date, even in the absence of payments of premiums" *(Zeman v Zack Agency, supra,* at p 267). In *Zeman,* we decided that coverage was deemed continued where the insurer failed to issue a

nonrenewal notice, and thereafter failed to bill the renewal premium. We now reach the next stage in the renewal procedure envisioned by the Legislature and not addressed in *Zeman*. In sum, we hold that in the absence of a notice of nonrenewal in compliance with section 167-a (4) (a), renewal is automatic upon billing for the renewal term, and a notice of cancellation is required to terminate coverage.

LAZER, J. P., BROWN and O'CONNOR, JJ., concur.

Judgment of the Supreme Court, Kings County, entered August 31, 1983, affirmed, with costs.