WILLIAM A. QUAST, Respondent, *v.* FIDELITY MUTUAL LIFE INSURANCE COMPANY, Appellant.

Contract — insurance (life) — pleading — effect of general denial in answer in action on contract — under such answer, in action on life insurance policy, company cannot prove violation of statutory requirements forbidding special favors in payment of premiums — statute against discrimination aimed at insurance companies and their agents and affects insured only, if at all, when he is party to transaction.

1. The general denial in the answer in an action on a contract puts in issue simply all matters which the plaintiff was bound to prove to make out his cause of action; in order to avail himself of facts not appearing upon the face of the contract to establish its validity or illegality the defendant must plead them. Hence a general denial by an insurance company in an action brought on its policy does not authorize proof of alleged illegality on its own part in connection with the terms of the policy.

2. That a company soliciting and receiving the consideration for insurance may avoid its obligation on the ground that either itself or its agent has violated the law is a proposition repugnant to familiar elements of the law. This view is in accordance with the policy of our

law that no one will be permitted to profit by his own fraud or to take advantage of his own wrong or to found any claim upon his own iniquity or to acquire any property by his own crime.

3. The statute of Pennsylvania invoked by defendant provides that insurants shall not receive any special favor or advantage "not specified in the policy contract of insurance." *Held*, that the policy herein fully stated the consideration therefor and the terms of payment; hence there was no violation of this provision.

4. The Pennsylvania act provides that no insurance company doing business in that state shall make or permit any distinction or discrimination in favor of individuals between insurants of the same class and equal expectations of life in the amount or payment of premiums or rates, charge for policies of life or endowment insurance, or in the dividends or other benefits payable thereon, or in any other of the terms and conditions of the contracts it makes. *Held*, that if any advantage or discrimination was given plaintiff herein it was the voluntary act of defendant without participation therein by plaintiff, and it was not intended by the statute to make such a contract void. The statute is aimed at the insurance company and its agents, only applying to the insured, if at all, when the favor or discrimination was known to him, and it does not enable the defendant to profit by its own wrong as against one not in *pari delicto*.

*Quast* v. *Fidelity Mutual Life Ins. Co.*, 178 App. Div. 908, affirmed.

(Argued March 17, 1919; decided April 29, 1919.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered April 9, 1917, affirming a judgment in favor of plaintiff entered upon a verdict.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Wilber E. Houpt* for appellant. Neither the defendant nor the plaintiff could legally make the contract which the plaintiff claims was made. The alleged contract is illegal and void, and is prohibited by the statutes of both Pennsylvania and New York and plaintiff cannot recover thereon. (*Pennington & Kean* v. *Townsend,* 7 Wend. 276; *Thalheimer* v. *Brinkerhoof,* 20 Johns. 397; *Gray* v. *Hook,* 4 N. Y. 449; *N. Y. S. L. & T. Co.* v. *Helmer,* 77 N. Y. 64; *Pratt* v. *Short,* 79 N. Y. 437; *W. L.*

*Ins. Co.* v. *Clason*, 162 N. Y. 305; *Swing* v. *Dayton*, 124 App. Div. 58; 196 N. Y. 503; *Hart* v. *City Theatres Co.*, 215 N. Y. 322; *Barton* v. *P. J. & U. F. Plank Road Co.*, 17 Barb. 397; *Fowler* v. *Scully*, 72 Penn. St. 456.)

*Charles M. Harrington* for respondent. The agreement as claimed by the plaintiff is all contained in his policy, and the question of discrimination is, therefore, eliminated. (*Foot* v. *Ætna Life Ins. Co.*, 61 N. Y. 571; *McGee* v. *Felter*, 75 Misc. Rep. 349; 154 App. Div. 957; *Robinson* v. *Security Life & Annuity Co.*, 163 N. C. 415; *Meridian Life Insurance Co.* v. *Dean*, 62 So. Rep. 90; *Riggs* v. *Palmer*, 115 N. Y. 506; *Pennington* v. *Todd*, 47 N. J. Eq. 569.)

CRANE, J. This is an action upon an insurance policy to recover the guaranteed cash value together with the profits apportioned thereto.

William A. Quast, a resident of Buffalo, New York, in December of 1893 was insured for $2,000 by the Fidelity Mutual Life Association of Philadelphia. The annual premium was $32.16, which was paid by the insured for twelve successive years, the last payment being made December 25th, 1904.

The company, in 1905, had changed from a mutual life association to a regular stock company, taking the name of the Fidelity Mutual Life Insurance Company, and thereafter instead of writing insurance on the assessment plan proceeded to write all new policies on the legal reserve basis. Being desirous of exchanging the old policies outstanding for those of the new form of insurance which it was issuing, the defendant sent out an agent, one Masten Newton, to call upon the policyholders and effect a substitution where possible. The advantage or reasons for the change need not here be considered.

Newton called upon the plaintiff at his then place of business in Buffalo, and requested him to surrender his

old policy and take out a new policy on the twenty-payment life plan. The application which the insured signed at Newton's request read as follows:

### " APPLICATION.

" I, William A. Quast, do hereby apply to the Fidelity Mutual Life Insurance Company, of Philadelphia, Penna., for an insurance on my life for $2000 on the 20 Pay G. A. plan, the premium, as stated in the policy, to be payable annually. I was born on the 8 day of December, 1865, and desire policy to be issued as of age 29. *Premiums to be fully paid in 10 years from this date.* Make policy payable to Della A. Quast, related to me as wife. *I select the 10 year accumulation period,* and I hereby agree on behalf of myself, and of any person who shall have or claim any interest in the policy issued under this application, that in the matter of distribution of surplus or profits, or the apportionment of dividends the principles and methods which may be adopted by the Company for such distribution or apportionment, and its determination of the amount equitably belonging to any policy which may be issued under this application, shall be and hereby are ratified and accepted.

*In consideration of the issuance of the policy herein* applied for, I hereby surrender to said Company all right, title and interest in and to Policy or Certificate No. 45635, issued to me under the title of The Fidelity Mutual Life Association.

" Dated at Buffalo, N. Y., May 27, 1905.

" WILLIAM A. QUAST, Applicant,

" Witness,                    Address, 65 Watson St.

" M. NEWTON.                    Buffalo, N. Y."

The premium for the new policy was $72.68, payable annually for ten years, the policy becoming a fully paid up policy on May 27th, 1915.

The agreement as understood by the plaintiff and as

18

called for by the application and the policy was, in substance, that the plaintiff should surrender his old policy upon which he had paid for twelve years and that the defendant would give him a twenty-payment life policy to become a fully paid up policy by the annual payment of $72.68 for ten years. The first ten years of the twenty-payment life policy were to be paid for by the surrender of the old policy.

The new policy when issued recited the contract in these particulars as follows:

"This insurance is granted as of date May 27th, 1895, in consideration of the application herefor, which is made a part hereof, and of the surrender and cancellation of Policy No. 45635, issued by The Fidelity Mutual Life Association, now The Fidelity Mutual Life Insurance Company, and of the payment in advance of Seventy-two and 68/100 Dollars, and of the payment of a like amount on or before the 27th day of May in every year thereafter, until premiums for twenty years have been duly paid, or until the prior death of the insured.

"The premium-paying period on this policy ends on the twenty-seventh day of May, 1915."

The insured paid the premiums as called for until the maturity of the policy on the 27th day of May, 1915, when he elected to take, in accordance with its provisions, the paid up cash value together with the profits. The defendant, then for the first time, informed him that he had signed a certificate of loan wherein he had agreed to pay $536, and six per cent thereon for the first ten years of the twenty-payment life policy, and that he was only entitled to the balance of the cash surrender value and the profits after the deduction of this amount. The balance of $622.93 the defendant offered to pay.

Claiming that he never signed any loan certificate or made any such contract the plaintiff brought this action upon his policy.

By its answer the defendant after certain denials and

admissions set forth as a defense the facts in substance .
as already stated and further alleged that the plaintiff
had borrowed from it by a certificate of loan signed by
him the sum of $536, to pay for the first ten years of the
new policy, which was to be deducted from any sum
due upon the policy and the defendant alleged it was ready
to pay the plaintiff this balance if he would accept the same.

Under these pleadings the trial proceeded upon the
sole issue of whether or not the plaintiff had signed the
certificate of loan. The plaintiff denied that his name
appearing upon the paper had been signed by him, while
the witness, Masten Newton, testified that the plaintiff
signed it in his presence. Both sides called experts in
handwriting, those for the plaintiff claiming the signature
to be a forgery, and those for the defendant stating it to be
genuine. The judge charged the jury as follows:

" If you shall find that the plaintiff did not sign this
certificate it will be your duty to return a verdict for the
plaintiff for the full amount of $1,480.53 with interest
from May 27, 1915. If you shall find that he did sign
the certificate it will be your duty to bring in a verdict ·
for $622.93 without interest."

The jury found for the plaintiff.

After an unanimous affirmance by the Appellate
Division, only one question of law is raised on appeal
to this court, which arises from the refusal of requests
to charge. They are these:

" I ask the court to charge that plaintiff's contention
to the effect that the defendant agreed to issue a policy,
or the policy in suit, on the surrender of the old assess-
ment policy, and thereupon and on the payment of ten
annual premiums of $72.68 by plaintiff the defendant
did issue the policy in suit under such consideration
only, that the defendant then violated the law controlling
the case and did discriminate in favor of individuals,
between insurants of the same class in the amount of pre-
miums paid or rates charged for policies in the same class."

" I ask the court to charge the jury that if the defendant did discriminate in favor of individuals between insurants of the same class in the amount of premiums paid or rates charged for policies of the same class that then the policy in suit is illegal and the plaintiff cannot recover in this action."

The point regarding these requests is this: It appeared from the testimony of one of the defendant's witnesses that about 3,000 of the old life policyholders had surrendered their policies for new policies and in each instance had either paid cash for the insurance which was dated back or else had signed a loan certificate authorizing a deduction for such insurance to be made from the amount paid upon the policy. If the plaintiff did neither of these things, but simply surrendered his old policy for a new one which became fully paid in ten years, he received a benefit or favor not accorded to others in his class. They not only surrendered their policies, but paid for the first years of the twenty-payment life, while he surrendered his policy and paid nothing for these first ten years except what he had already paid upon the old policy. This, it is claimed by the defendant, is a violation of the Pennsylvania or New York statute against discrimination hereafter referred to and rendered the policy or insurance contract void.

At the very outset it will be noted that the defendant has failed to plead the new matter constituting the illegality. It knew before the action was commenced that the plaintiff denied the certificate of loan. By its answer it merely alleged that he had signed the certificate of loan and went to trial upon this issue. The alleged illegality did not appear upon the face of the complaint, nor in the application or insurance policy. It rested entirely upon facts within the defendant's knowledge, *i. e.*, the surrender of old policies by 3,000 other applicants and the payment by them of cash or the giving of loan certificates for back dated insurance. These

matters constituting discrimination and illegality should have been pleaded and such defense cannot now be raised under the issues as framed.

The general denial in the answer in an action on a contract puts in issue simply all matters which the plaintiff was bound to prove to make out his cause of action; in order to avail himself of facts not appearing upon the face of the contract to establish its invalidity or illegality the defendant must plead them. (*Milbank* v. *Jones*, 127 N. Y. 370; *Codd* v. *Rathbone*, 19 N. Y. 37; *Morford* v. *Davis*, 28 N. Y. 481; *School District of Kansas City* v. *Sheidley*, 138 Mo. 672.)

But passing from the question of pleading to the merits we have a contract which the parties have assumed to be a Pennsylvania contract. The application for the policy in question was written and delivered to the agent in Buffalo and mailed by the agent to the company at Philadelphia. The first premium was paid at the company's office in Buffalo and the policy sent by mail. Under such circumstances it may be that the contract of insurance was a New York contract. (*Equitable Life Assurance Society* v. *Clements*, 140 U. S. 226.)

The law of New York in 1905 regarding discriminations, being section 89 of chapter 690 of the Laws of 1892, read as follows:

" No life insurance corporation doing business in this State shall make any discrimination in favor of individuals of the same class or of the same expectation of life either in the amount of premium charged or in any return of premium, dividends or other advantages. No agent of any such corporation shall make any contract for insurance or agreement as to such contract other than that which is plainly expressed in the policy issued."

The penalty for violation was found in the Penal Code, the present sections being sections 1191 and 1200 of the Penal Law.

The parties, however, have treated this as a Penn-

sylvania contract and as the result is the same in either case I will pass at once to the consideration of the Pennsylvania statute which was offered in evidence. It reads:

" 107. No life insurance company doing business in Pennsylvania shall make or permit any distinction or discrimination in favor of individuals between insurants of the same class and equal expectations of life, in the amount or payment of premiums or rates charged for policies of life or endowment insurance, or in the dividends or other benefits payable thereon, or in any other of the terms and conditions of the contracts it makes, nor shall any such company or agent thereof make any contract of insurance or agreement as to such contract, other than as plainly expressed in the policy issued thereon, nor shall any such company or agent pay or allow or offer to pay or allow, nor shall any insurants receive directly or indirectly, as inducements to insurance, any rebate of premium payable on the policy or any special favor or advantage in the dividends or other benefit to accrue thereon, or any valuable consideration or agreement whatever not specified in the policy contract of insurance."

In the first place it may be noted that this statute provides that the insurants shall not receive any special favor or advantage " not specified in the policy contract of insurance."

As above quoted, the policy of insurance in this case fully stated the consideration for the twenty-payment life policy issued to the plaintiff and that it was to be fully paid in ten years upon the surrender of the old policy and the ten yearly payments of $72.68. Under the terms of this statute, therefore, there was no violation. Such has been the interpretation of this law by *State of Maine* v. *Schwarzschild* (83 Maine, 261), where the Maine statute was almost exactly the same as this Pennsylvania law.

But even if this be not a sufficient answer to the

appellant's objections, let us pass to the vital point and determine whether the defendant could plead as a defense to its contract its own violation of the law.

Succinctly stated the facts are these: For twelve years the plaintiff paid $32.16 to the defendant on a policy of insurance. In 1905 he surrendered the old policy of insurance under an agreement that for the surrender of this policy the defendant would give him a twenty-year life policy payable in ten years if he made ten annual premium payments of $72.68. The insured has kept his agreement and paid all the amounts to the company which has never offered to return any part thereof. It refuses to carry out its contract while still holding on to the premiums, pleading its own illegal act as a defense. The illegality is said to consist in giving the plaintiff a favor which it did not give others in his class and that in so doing it violated the law. It seeks to profit by illegitimate business. No claim is made that the plaintiff knew that he was receiving any discrimination or favor not given to others, and there is no evidence in the case even warranting the inference that the plaintiff could have known or discovered such a fact. The advantage or discrimination, if given, was the voluntary act of the defendant and hidden within its books until revealed upon this trial. Certainly the courts will not listen to such a pleading or permit the defendant to profit by its own wrong as against one not in *pari delicto.*

The Pennsylvania act did not intend to make these contracts void for any such discrimination as is here shown; it aimed at the insurance company and agents; only applying to the insured if at all when the favor or discrimination was known to him. While we may be bound to consider only such portion of the Pennsylvania statute as has been offered in evidence, yet the fact is that the penalties annexed to the statute consist of fines for repeated violations and a disqualification from acting as a life insurance agent. (Pepper & Lewis Digest of

Penn. Laws, 1895 to 1897, vol. III, p. 350.) This indicates that the punishment was not to fall upon the innocent policyholder and that an executed contract was not to be made void. It is the intention which governs in these matters.

As insurance companies have rarely raised such a plea the cases upon this point are scarce, but such as we find express the law as here stated. In *Laun* v. *Pacific Mutual Life Insurance Company of California* (131 Wis. 555) the insured sought to recover premiums paid on the ground that a discrimination had been made in his favor. The statute of Wisconsin was the same as that of Pennsylvania and after a review of the authorities the court said:

" A life insurance company may have contracts with thousands of persons for millions of dollars, and be found to have through its agents, with or without the knowledge of the officers of the company, granted rebates out of the agent's commission or out of the expense fund to many of its patrons. The act is *malum prohibitum* only. The legislature neither declared the insurance contract void nor made the act a misdemeanor, nor undertook to punish both parties to the transaction, nor undertook to add any sanction to the law against discrimination other than the forfeiture of license of the insurance company, or of the agent, to do business in this state. Can it be presumed under the authorities cited in this opinion that there was a legislative intention that the insurance company should retain all premiums and enrich itself by illegality through absolution from all liability on such policies? Can it be presumed that it was intended that all premiums that the insured might pay at any time within the period limited by law for the commencement of actions could be recovered back to the disadvantage of those insurers who conformed to law and paid the legal rates, by diminishing the annual surplus which should go to lessen their premiums, or by

impairing the fund to which such law-abiding insurers must look for security? Would not this put a premium upon violations of this statute and enrich those concerned in such violations at the expense of the just man who kept the law? Were there nothing but these consequences apparent from the peculiar subject matter of the legislation in question, we might be warranted in inferring that the legislature intended no such consequences."

In *Meridan Life Insurance Company* v. *Dean* (62 So. Rep. [Supreme Court of Alabama] 90). the action was on a life insurance policy for $2,500, the defense being the violation of a statute like the Pennsylvania act. In the opinion it is stated as follows:

" Insurance statutes are passed to protect the citizens, not to trap them. * * * We must in each case look for the intent of the law that prohibits the act which so entered into or induced the contract. * * * The statute may in terms declare such contract void, voidable, illegal, or valid; but, if not, it is the subject of judicial construction to ascertain the intent. * * * The question is entirely one of legislative intent. * * * If the defendant's pleas are good in this case, then any insurance company can defeat any recovery on any policy by violating the statute and then setting up its own wrong as a defense to the action on the policy. It can collect the premiums on policies for years, less whatever rebate it sees fit to allow, being careful not to allow the same rebate to all, keep the premiums paid, and escape all liability for losses by setting up that it has violated the law. Such a construction of the statute ought not to be adopted if it can be avoided."

So, also, in *Robinson* v. *Security Life & Annuity Company* (163 N. C. 415) we find it stated regarding a similar statute:

" The statute does not invalidate the contract of insurance or the agreement of the parties, and it purports

to operate upon the insurance companies alone." (See, also, *Smathers* v. *Bankers Life Insurance Co.*, 151 N. C. 98.)

The Supreme Court of Pennsylvania (*Swan* v. *Watertown Fire Ins. Co.*, 96 Penn. St. 37) has decided that foreign insurance companies doing business in that state without having complied with the provisions of the statute relating to such companies cannot set up their turpitude to defeat actions on their contracts brought by innocent persons. The statute does not impose upon the insured the duty of seeing that the insurer and his agents have complied with the statutory requirements.

"That a company," said the court, "soliciting and receiving the consideration for insurance, may avoid its obligation on the ground that either itself or its agent has violated the law, is a proposition repugnant to familiar elements of the law."

To the same effect is *Watertown Fire Insurance Company* v. *Rust* (141 Ill. 85) in which the court said:

"The insurance company knows whether it has complied with the law, but the public do not, and they have the right, in the absence of bad faith and of actual knowledge to the contrary, to presume that a foreign insurance company assuming to act in this state is acting lawfully, and the company, when sued upon a policy issued under such circumstances, is estopped to allege that it had no lawful authority to issue the policy."

The same principle was applied in *Fritts* v. *Palmer* (132 U. S. 282).

That statutes similar to this are enacted for the protection of the insured and for the control and punishment only of the insurer in the absence of words to the contrary is stated by EARL, J., in *People* v. *Formosa* (131 N. Y. 478, 482), regarding rebates by agents. He said:

"The nature of insurance contracts is such that each person effecting insurance cannot thoroughly protect himself. He is not competent to investigate the condi-

tion and solvency of the company in which he insures, and his contracts may run through many years and mature only, as a rule, at his death. Under such circumstances, it is competent for the legislature, in the interest of the people and to promote the general welfare, to regulate insurance companies and the management of their affairs, and to provide by law for that protection to policyholders which they could not secure for themselves."

The policy of our law that no one will be permitted to profit by his own fraud or to take advantage of his own wrong or to found any claim upon his own iniquity or to acquire any property by his own crime was clearly expressed in *Riggs* v. *Palmer* (115 N. Y. 506).

We, therefore, conclude that even if the insurance company were in a position under its pleading to raise the question, the policy in this case is not void for discrimination and that neither the Pennsylvania nor the New York statute has such effect on the facts and under circumstances here stated. The judgment appealed from should, therefore, be affirmed, with costs.

HISCOCK, Ch. J., CHASE, COLLIN, CUDDEBACK, HOGAN and McLAUGHLIN, JJ., concur.

Judgment affirmed.